In the Matter of **LEHIGH VALLEY RAILROAD COMPANY, Debtor.**

Appeal of **Raymond J. LAMB et al.**

No. 71–1194.

United States Court of Appeals, Third Circuit.

Argued Feb. 8, 1972.

Decided April 6, 1972.

Lockwood W. Fogg, Jr., Philadelphia, Pa., for appellant.

William R. Traub, Duane, Morris & Heckscher, Philadelphia, Pa., for appellee.

Before KALODNER, HASTIE and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

In the course of the pending proceeding in the District Court for the Eastern District of Pennsylvania for the reorganization of the Lehigh Valley Railroad Co. under section 77 of the Bankruptcy Act, 11 U.S.C. § 205, the reorganization court, after notice and hearing, entered Order No. 15 requiring the New Jersey law firm of Lamb, Blake, Hutchinson & Dunne (hereinafter called the Lamb firm) to endorse and surrender to the trustees of the railroad in reorganization a $400,000 check drawn by the Treasurer of Jersey City to the order of the Lamb firm and the trustees.[1] The order specified that it was entered without prejudice to the right of the Lamb firm "to assert its claim for any attorney's lien, if any, in this Court at a later date." The Lamb firm has appealed, challenging the jurisdiction of the reorganization court and also claiming a right to withhold an earned legal fee from the $400,000.

The Lamb firm had successfully represented the railroad in local tax refund litigation that was settled in 1966. Under the terms of the settlement Jersey City agreed to refund to the railroad $2,000,000 in five annual installments of $400,000 each from 1967 through 1971. There was no provision in the settlement agreement for any payment to the Lamb firm. However,

---

1. The order also covered a similar $10,000 check of the City of Perth Amboy. We shall discuss only the Jersey City transaction, but our analysis and our decision apply to both transactions.

the railroad had retained the firm under a contingent fee agreement in which it obligated itself to pay the attorneys 25 percent of the first $100,000 of tax recovery and 15 percent of recovery in excess of that sum.

The pending section 77 reorganization proceeding was instituted in July 1970. The present dispute concerns a $400,000 installment of the agreed settlement that became payable in December, 1970. Before the due date the Lehigh Valley trustees notified Jersey City that the entire $400,000 should be paid directly to them. The Lamb firm countered by advising Jersey City that it claimed a lien on the obligation. Then the firm filed a proceeding against Jersey City in the Superior Court of New Jersey and requested and obtained therein, without notice to Lehigh Valley or its trustees in reorganization, an order directing the city to make its 1970 payment of the Lehigh Valley settlement in the form of a check payable to the trustees and the Lamb firm. The order also directed that this check be delivered to the Lamb firm. The city complied with the order. Learning of this, the trustees cited the Lamb firm before the reorganization court and, after a full adversary hearing, obtained the order from which this appeal has been taken.[2]

■ The appellants contend that the reorganization court had no jurisdiction over the property in question and no authority to dispose of its as provided in Order No. 15. We hold that the court did have jurisdiction.

2. Pursuant to a supplementary order of the reorganization court, the $400,000 check has been cashed and the sum claimed by the Lamb firm, in the form of interest bearing securities of the United States, has been deposited in the registry of the court pending the outcome of this appeal.

3. A chose in action may be property of the debtor within the meaning of section 77, as we held very recently in In the Matter of Penn Central Transportation Co., 3 Cir., decided December 23, 1971, 453 F.2d 520.

4. "Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have

■■ Our analysis begins with the fundamental provision of section 77 that during and for the purposes of a railroad reorganization proceeding the reorganization court shall "have exclusive jurisdiction of the debtor and its property wherever located" and in that connection may exercise "all the powers . . . which a court of the United States would have had if it had appointed a receiver in equity of the property of the debtor for any purpose." It is not disputed that this grant of jurisdiction empowers the court and its trustees to administer property in the actual possession of the railroad. On the other hand, property claimed by a railroad in reorganization, or similarly by an ordinary bankrupt, may be a chattel in the physical possession of another person or a chose in action that in its nature cannot be in the physical possession of anyone.[3] But so long as the person in physical possession of the chattel, or the obligor of the chose in action, does not dispute the debtor's, or the bankrupt's entitlement and right to possess or collect, the situation is not essentially different in legal contemplation from that of property in the physical possession of the debtor or bankrupt. This equivalence is conveniently expressed in the accepted rule that a reorganization or a bankruptcy court acquires jurisdiction of all property in the actual or "constructive" possession of the debtor or the bankrupt.[4] It is only when a chattel is withheld by its actual possessor under a substantial claim of right or when an obligation is disputed by the alleged obligor that the

actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy." Thompson v. Magnolia Co., 1940, 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876.

". . . [W]hat Congress intended when it adopted . . . amendments to the jurisdictional provisions of section 77 . . . was that the court of bankruptcy should have every power deemed necessary to enable it to deal with the property . . . which was in the actual or constructive possession of the debtor at the time the petition for reorganization was filed and approv-

trustees must resort to a plenary action in a court that has personal jurisdiction over the adverse claimant in order to establish that the property is an asset subject to the jurisdiction of the reorganization or bankruptcy court. See, for example, In re Standard Gas & Electric Co., 3d Cir. 1951, 119 F.2d 658; Bovay v. H. M. Byllesby & Co., 5th Cir. 1937, 88 F.2d 990; Bradley v. St. Louis Terminal Warehouse Co., 8th Cir. 1951, 189 F.2d 818. But if an obligor admits the fact and the amount of its indebtedness to the debtor or bankrupt, the reorganization or bankruptcy court may exercise jurisdiction over this intangible property directly and immediately, as it would in the case of a chattel in actual or constructive possession. In the Matter of Penn Central Transportation Co., *supra;* In re Borok, 2d Cir. 1931, 50 F.2d 75; In re Zimmermann, S.D.N.Y.1933, 4 F. Supp. 801, aff'd 2d Cir. 1933, 66 F.2d 397.

In its initial order instituting the Lehigh Valley reorganization the district court properly and comprehensively asserted its authority over the property of the railroad. Paragraph 2 of Order No. 1 authorized the debtor "to collect all . . . accounts of the debtor." Paragraph 10 of the same order provided that "[a]ll persons . . . are restrained and enjoined from interfering with, seizing . . . or enforcing liens upon, or in any matter disturbing any portion of the assets . . . credits, choses in action . . . belonging to or in the possession of the debtor. . . . "

We now apply these concepts and mandates to the railroad's claim against Jersey City. As obligor, Jersey City does not challenge the fact or the amount of its obligation to the railroad as that obligation existed in July 1970 when this reorganization proceeding was instituted. Indeed, but for the intervention of the present appellants in disregard of the reach of section 77 and in clear violation of Paragraph 10 of Order No. 1, Jersey City in all likelihood would have paid the trustees the $400,000 that became due to the railroad in December, 1970, just as it had paid previous installments to the railroad itself. As an obligation admitted by the obligor, this debt was in the "constructive" possession of the railroad, or in the same legal status for purposes of section 77 reorganization as a chattel in the actual possession of the railroad. It came within the jurisdiction of the reorganization court when the reorganization petition was approved in July 1970. And Order No. 1 authoritatively controlled future dealings with this obligation.

What appellants have tried to do is oust the jurisdiction of the reorganization court by having the form of the obligation changed after July 1970 from an ordinary debt to a check and by having that check delivered to them. They have attempted to change their status from attorneys with at most an alleged charging lien on a sum owed their client to that of attorneys with a retention lien on a check in their own possession. Even if such action had not been plainly prohibited by reorganization Order No. 1, section 77 does not permit a creditor to enlarge his pre-reorganization rights against his debtor or in relation to the debtor's property by dealing with the debtor's property during reorganization without the consent of the reorganization court.[5] Thus, the jurisdiction of

---

ed, but not including property claimed for the trust estate which was in the possession of adverse claimants under substantial claims of ownership." Thompson v. Terminal Shores, Inc., 8th Cir. 1939, 104 F.2d 1, 9.

5. The order of the New Jersey Superior Court, entered at the appellant's behest without notice to the reorganization trustees and purporting to legitimate the appellants' interference with a chose in action of the railroad in reorganization, could not supersede or diminish the then existing authority of the reorganization court to exercise jurisdiction over the railroad's property. Cf. Isaacs v. Hobbs Tie & Timber Co., 1931, 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; In re Tyler, 1893, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689; In re Weston, 2d Cir. 1934, 68 F.2d 913.

the reorganization court over Jersey City's check, drawn during reorganization and made payable to the appellants and the trustees, was no less than its jurisdiction to deal with the debt in satisfaction of which that check had been drawn.

Turning from jurisdiction to the merits, we have no doubt that the reorganization court acted properly in requiring that the entire $400,000 be surrendered by the Lamb firm to the reorganization trustees. It is a legitimate and primary concern of a section 77 reorganization court that the assets of the debtor be marshalled and used to assure the continuing operation of the railroad for a reasonable time to permit the preparation and consideration of a plan of reorganization. In this process the court may, as was done here, postpone the determination of the validity and character of a claimed lien upon property of the debtor, as well as the award of any merited priority to the claim thus secured, until a later state or reorganization. *Cf.* Gardner v. New Jersey, 1947, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504.

Order No. 15 will be affirmed.