**In the Matter of READING COMPANY, Debtor.**

**Bankruptcy No. 71–828.**

United States District Court,
E. D. Pennsylvania.

Jan. 4, 1980.

Howard H. Lewis, James A. Sox, Philadelphia, Pa., for petitioner.

William P. Quinn, Stephen R. Bolden, Nicholas J. Scafidi, Philadelphia, Pa., for respondent.

## OPINION RE TRAILER TRAIN STOCK

DITTER, District Judge.

In 1955 a group of railroads, including the Reading Company, formed Trailer Train Company to purchase rail equipment for lease to member shareholders. Reading invested $150,000. and was issued 500 shares of the corporation's stock. Trailer Train has never paid any dividends; instead, it has reinvested its profits in additional equipment for the use of its shareholders. In 1971, Reading went into bankruptcy and in 1976, pursuant to the Regional Rail Reorganization Act, 45 U.S.C. §§ 701–94 (1974), conveyed its operating assets to Consolidated Rail Corporation (Conrail), thus losing all benefits of its Trailer Train investment.

Reading's trustees have now filed a petition to require Trailer Train to purchase Reading's stock, convert it into a debt instrument, or convert it into preferred stock on which dividends would be paid. In response to an earlier petition from the trustees I had ordered Trailer Train to meet with Reading's representatives and negotiate the issues which surround Reading's inability to realize return on its Trailer Train investment. See, Memorandum and Order No. 1557. The negotiations were fruitless. As it did before, Trailer Train disputes the jurisdiction of this court, sitting as a reorganization court, to tell it to do anything or to make any order concerning the present controversy. Therefore, Trailer Train has moved to dismiss the trustees' petition on jurisdictional grounds as well as for other reasons which will be discussed below.

## THE JURISDICTION OF A REORGANIZATION COURT

The first basis for Trailer Train's motion to dismiss is its contention that this court has no summary jurisdiction over the claim asserted by Reading.

A bankruptcy court's jurisdiction is founded upon sections 2, 23, and 77 of the Bankruptcy Act of 1898 as amended, 11 U.S.C. §§ 11, 46, and 205. Most important is section 77 which provides that during and for the purposes of a railroad reorganization proceeding, the reorganization court

> shall . . . have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a court of the United States would have had if it had appointed a receiver in equity of the property of the debtor for any purpose.

11 U.S.C. § 205(a).

The Supreme Court noted in *Thompson v. Magnolia Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), that "[b]ankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt *at the time of the filing of the petition in bankruptcy.*" *Id.* at 481, 60 S.Ct. at 630 (emphasis added). See also, *PIC Realty Corp. v. Evans*, 605 F.2d 476, 479–80 (9th Cir. 1979).

■ The property of a debtor for purposes of section 77 jurisdiction has been construed to encompass choses in action. A chose in action is in the constructive possession of a bankrupt when the obligor does not question the estate's ownership and right to collect that which is due. It is only when an obligation is disputed by the alleged obligor that the trustee must resort to a plenary action in a court that has personal jurisdiction over the adverse claimant in order to establish that the chose is an asset subject to the jurisdiction of the reorganiza-

tion court. *In re Lehigh Valley Railroad Co.*, 458 F.2d 1041, 1043–44 (3d Cir. 1972).

■ Here, when Reading filed its petition in bankruptcy there was no dispute about its ownership of 500 shares of Trailer Train, nor is that ownership in dispute today. When Reading's petition in bankruptcy was filed, there was no dispute about its being entitled to benefit from its stock ownership. It continued to enjoy those advantages for more than four years, profiting from having equipment available under favorable lease terms. In short, there has never been any controversy about Reading's ownership or its right to benefit from ownership in the stock of Trailer Train. The only dispute is whether all incidents of ownership are forfeit because Reading conveyed its operating equipment and properties to Conrail. This is a question which is inextricably entwined with Reading's bankruptcy. Conrail was incorporated by Congress for the express purpose of creating a new railroad network from portions of eight bankrupt lines. But for Reading's bankruptcy and the Congressional enactment, there would have been no conveyance to Conrail and presumably no change in Reading's continued enjoyment of the rights accruing from its ownership of Trailer Train stock. Judicial economy, the smooth administration of justice, and the liberal jurisdiction given to reorganization courts to adjudicate all controversies involving the property of a bankruptcy dictate that Reading's dispute with Trailer Train is one for me to hear. See, *Katchen v. Landy*, 382 U.S. 323, 328–33, 86 S.Ct. 467, 472–74, 15 L.Ed.2d 391 (1966).

Trailer Train contends that the jurisdictional sections of the Bankruptcy Act of 1898 as amended do not allow a reorganization court to retain jurisdiction to *enforce* a chose in action against a debtor or obligor. This interpretation has been devised by reading section 23 with section 77. Section 23 allegedly withdraws from the bankruptcy court jurisdiction over plenary suits against ·adverse claimants which prior to bankruptcy may have been brought in a

court of general jurisdiction.[1] Section 23 is inapplicable here since the suit never could have been brought prior to bankruptcy. The whole question of the worth of the stock evolves from the bankruptcy and the fact that Reading no longer operates a railroad.

Two cases from the Third Circuit illustrate the importance of the bankrupt's possession at the time of bankruptcy. *In re Penn Central Transportation Co.*, 453 F.2d 520 (3d Cir. 1972), dealt with the right of various banking institutions to set off a bankrupt railroad's bank deposits against debts it owed to such banks. The banks challenged the reorganization court's jurisdiction to decide the matter. The Third Circuit held that it was neither necessary nor desirable to have the issue tried in a court of general jurisdiction because the dispute was within the area of special concern and competency of the reorganization court and did not present any controversy about entitlement to property when reorganization began. *In re Lehigh Valley Railroad Co.*, 458 F.2d 1041 (3d Cir. 1972), involved an attorney's right to a lien on a tax refund due a bankrupt railroad. The amount was admittedly due at the time reorganization commenced, and was thus in the constructive possession of the railroad at that time. For this reason, the attorney's challenge to the summary jurisdiction of the reorganization court was dismissed by the Court of Appeals.

To support its argument that this court lacks summary jurisdiction, Trailer Train cites the following cases: *In re Lehigh and Hudson River Railway Co. (Baker v. Troiano )*, 468 F.2d 430 (2d Cir. 1972); *In re Welded Construction, Inc.*, 339 F.2d 593 (6th Cir. 1964); *Thompson v. Terminal Shares*, 104 F.2d 1 (8th Cir.), cert. denied 308 U.S. 559, 60 S.Ct. 100, 84 L.Ed. 470 (1939); and *In re Roman*, 23 F.2d 556 (2d Cir. 1928). However, these cases involve factual situations wholly inapposite to the circumstances here, and more importantly, do not involve property undisputably in the actual or constructive possession of the bankrupt at the time of bankruptcy and thereafter. *In re Warren*, 387 F.Supp. 1395 (S.D.Ohio 1975), also cited by Trailer Train, involved consensual jurisdiction to a summary proceeding and is therefore not of precedential value under the instant circumstances.

An analysis of the case law persuades me that summary jurisdiction exists to determine the trustees' petition to obtain some type of return on its Trailer Train shares. It is clear that the stock was in the hands of the bankrupt prior to filing for reorganization, and any determination regarding the stock's proceeds logically flows from the power of this court to preserve the bankrupt's assets.

■ Moreover, as I stated in my earlier opinion in which I ordered Trailer Train to

---

1. The general jurisdictional grant to the bankruptcy court is found in section 2 of the Act, 11 U.S.C. § 11, as amended. Subsection (a)7 of the Act empowers district courts sitting in bankruptcy to

> (7) Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided, and determine and liquidate all inchoate or vested interests of the bankrupt's spouse in the property of any estate whenever, under the applicable laws of the State, creditors are empowered to compel such spouse to accept a money satisfaction for such interest

11 U.S.C. § 11(a)(7).

The exception referred to is found in Section 23 of the Bankruptcy Act, 11 U.S.C. § 46, which, as amended, provides:

> a. The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this Act [title], between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.
> b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act [title] had not been instituted unless by consent of the defendant, except as provided in sections 60[96], [107], and 70[110] of this Act [title].

11 U.S.C. § 46.

negotiate,[2] this court would have *plenary* jurisdiction based on diversity of citizenship over the instant question.

Prior to bankruptcy, Reading could have sued Trailer Train Company in this district court under diversity jurisdiction pursuant to 28 U.S.C. § 1332. Cf. *Robert C. Haldeman, Trustee of Lehigh Valley Co. v. Bethlehem Steel Corp.*, No. 77–816 (E.D.Pa. Aug. 29, 1978). Indeed, if I were to dismiss the trustees' present petition on the grounds that the court lacked jurisdiction to proceed in this way, the trustees could bring immediate suit against Trailer Train in this court. Under the court's local rules, that suit would be deemed to be related to the Reading Bankruptcy Proceedings and would be immediately assigned to me. I would have no basis for recusal. See generally, 28 U.S.C. § 144.

Whether this is technically summary or plenary jurisdiction is unimportant for practical purposes. If and when it becomes necessary to adjudicate the rights of the parties, I will proceed on the basis of notice, hearing, and all of the provisions for due process. (footnotes omitted).

Memorandum and Order No. 1557, pg. 3.

Trailer Train contends that the Reading's claim has nothing to do with the reorganization[3] and that to adjudicate it in this court would prejudice its case. The relevance of this stock issue to the Debtor's estate inheres in the preservation of an asset for distribution in the reorganization. Concerning the possibility of prejudice, I can only reiterate that I will afford full due process rights in the hearing on the stock issue and conduct the proceedings in an impartial manner. Trailer Train notes on page 6 of its reply brief that "[w]hile the

Court has pointed out that the same judge would be likely to preside over a plenary action under local rules, we would regard that procedure as a substantial improvement." I fail to see the utility of refiling this case and having it assigned to me as a regular complaint.

Trailer Train's motion to dismiss on jurisdictional grounds must be refused.

## FAILURE TO PLEAD PROPERLY AND TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

■ Trailer Train asserts that the Reading Company has not set forth sufficient facts so that defendant has knowledge of the claim against it. Under Fed.R.Civ.P. 8(a)(2) the defendant is entitled to a "short and plain statement of the claim". In its earlier petition which led to the order requiring Trailer Train to negotiate with the Reading trustees and which is incorporated in the present petition by reference, Reading alleged its investment in Trailer Train, Trailer Train's method of operation, the reinvestment of its profits, its policy not to pay dividends, and Reading's consequent inability to profit from its shares of Trailer Train stock. Those assertions coupled with Reading's present prayer for relief more than satisfy the pleading requirements of the Federal Rules.

■ The defendant also contends that Reading argues in its brief that it has been defrauded by Trailer Train. Of course, fraud must be pleaded with specificity pursuant to Fed.R.Civ.P. 9(b). Reading has done so, but even if that were not the case, the use of the term fraud in Reading's brief would hardly be grounds to dismiss a pleading that does not use the word fraud and is otherwise adequate on its face to advise

2. Trailer Train attempts to distinguish my first opinion by contending that it involved an order to negotiate a solution to the stock situation while the present petition seeks to deprive Trailer Train of property. In my view, the jurisdictional issue remains the same for both petitions.

3. Trailer Train argues that the Reading Company was content with the reinvestment approach

until Conrail took over the operating assets of the Reading in 1976 pursuant to the Regional Rail Reorganization Act. Consequently, Congress not Trailer Train is to blame. I find that argument to be without merit. Changed circumstances should be considered by the majority shareholders of a company in exercising their duty to advance the common good.

Trailer Train of the exact nature of Reading's claim. This is especially true in view of the liberality allowed such pleadings in bankruptcy cases. See, *In re Germain*, 144 F.Supp. 678 (S.D.Cal.1956).

Trailer Train also moves to dismiss on the ground that the petition fails to state a claim upon which relief can be granted. It contends that under Delaware law [4] a minority shareholder cannot force management to repurchase or convert its stock.

■■■ Generally, the majority shareholders and corporate management owe a fiduciary duty to minority stockholders. *Singer v. Magnavox*,[5] 380 A.2d 969 (Del.1977); *Weisbecker v. Hosiery Patents, Inc.*, 356 Pa. 244, 51 A.2d 811 (1947). Reading has adequately alleged that Trailer Train breached this fiduciary duty by refusing to provide Reading with any return on its stock. As the case progresses, additional facts and evidence will become available to assess the exact nature and the merit of Reading's claims, but at this point, I conclude Reading's petition is sufficient to withstand a motion to dismiss.

### SECURITY PENDENTE LITE

As part of its petition, Reading asks for an order requiring Trailer Train to deposit with the court "an amount equal to the present book value of Reading's stock in order to ensure that sufficient monies will be available . . . ." [petition ¶ 5(c)]. Trailer Train opposes this by claiming that the posting of security would amount to prejudgment seizure of Trailer Train's property in violation of due process.

■■■ I agree with Trailer Train that inherent in due process is the notion that a person seeking to seize property must demonstrate that the asset will be dissipated or wasted unless it is escrowed or attached. Reading believes that security is necessitated by the express policy and intent of Trailer Train's management to reinvest profits in capital acquisitions. I understand the Reading trustees concern with preservation of the assets of the estate, however, their proposal would necessitate Trailer Train's posting security in excess of 6.5 million dollars before proceeding with any determination on the merits. Trailer Train apparently is a strong, ongoing corporation in no danger of insolvency. Surely, it could satisfy a judgment if one finally issues. Thus, I will grant Trailer Train's request to deny that part of Reading's petition seeking security pendente lite since such extraordinary remedy is not warranted at this time.

For the reasons expressed in the foregoing memorandum, I will deny Trailer Train's motion to dismiss and grant its request to dispense with posting security pendente lite.

---

**4.** Both Reading and Trailer Train in their briefs rely on Delaware law in arguing about breach of a fiduciary duty. At this point, it is unnecessary to decide whether under the bankruptcy act federal common law governs or whether the conflicts rule of the forum state should be applied. See, 1A Part 2 Moore's Federal Practice § 0.325 (2d ed. 1979).

**5.** Trailer Train argues that *Singer* is limited to corporate merger cases. However, the court in *Singer* stated the rule that a corporate officer has a fiduciary obligation of honesty, loyalty, good faith, and fairness, then noted, "[w]hile that comment was about directors, the spirit of the definition is equally applicable to a majority stockholder in any context in which the law imposes a fiduciary duty on that stockholder for the benefit of minority stockholders." 380 A.2d at 977. I find that Delaware corporate law would recognize a cause of action by a minority stockholder against a majority stockholder for breach of fiduciary duty.